### N. L. GIBBON v. CYNTHIA E. LAMM.

(Filed 26 April, 1922.)

1. **Fires—Negligence—Employer and Employee—Master and Servant—Evidence—Instructions—Nonsuit—Trials.**

   Where the owner of land built a fire on his pasture himself, or by his servants or agents, and there is evidence that a strong wind carried sparks and set fire to a woods adjoining the pasture from whence it was communicated to the plaintiff's land to his damage, and that the owner had instructed his servants or agents to put out the fire, which they had disobeyed, the case presents a mixed question of law and fact, the jury to find the facts under a correct instruction of the court as to the law; and the granting of a motion as of nonsuit is erroneous.

2. **Same—Proximate Cause.**

   Where the owner of land builds a fire on his own premises, it is required of him to exercise the care of an ordinarily prudent man to prevent its communication to adjoining lands under the existing circumstances, whether through the air or along the ground, and he is also liable for the negligence of his servants or agents whom he has left in charge, when his own, or their negligence attributable to him, is the proximate cause of the

damage to the lands of adjoining owners, or to others beyond, to which the fire has been communicated, the question of proximate cause being a question for the jury under proper instructions from the court.

APPEAL by plaintiff from *Lane, J.*, at December Term, 1921, of MOORE.

This action was brought to recover damages for the negligent setting out of fire by the defendant, the plaintiff alleging that the fire spread to his premises and burned his property, and that he was thereby damaged.

At the close of the plaintiff's evidence the defendant demurred thereto and moved to dismiss the action, and the court allowed the motion and dismissed the action, and plaintiff excepted. This is the only question in the case. The matter before the court is simply the sufficiency of the evidence, and whether it ought to have been submitted to the jury. There was evidence that the fire which destroyed the plaintiff's property was set out by the defendant, and it was also sufficient to show that it spread to the property of the plaintiff and burned it, and he thereby suffered damage.

We will state briefly so much of the testimony as is pertinent to the ruling of the court dismissing the action.

J. W. Phillips testified: "The fire was in the pasture. There was no woods inside the pasture, but woods adjoining the pasture on the northeast side, and that is how the fire got out. The woods next to the pasture were burned."

N. J. Patterson testified: "I know where Mr. Lamm and his wife lived, and where the fire was. I know Mr. Gibbons' place also. I live about halfway between Mr. Gibbons' place and Mr. Lamm's place, and lived there at the time the fire occurred. The fire burned me out. It came to my house from the southwest, and that was in the direction of Mr. Lamm's. The fire occurred near 2 o'clock, 1:30, or somewhere along there. The wind was blowing strong. The wind was coming from toward Mr. Lamm's premises, coming that way. The fire was between four and five hundred yards from my house when I saw the blaze. Coming a little to the left of my premises, between me and the graded road. The fire was going in the direction of Mr. Gibbons' premises. Mr. Gibbons' premises were about two miles from my place. It was sometime before I went over to Mr. Gibbons' after the fire occurred, two or three weeks, I suppose. Everything was burned from my place over there. Some buildings were burned, I noticed. It burned some property for me, and I thought at the time that I was hurt worse than any one else, burned a lot of my dry oats and feed. I didn't go any time after the fire from my premises to Mr. Lamm's. I live about two miles from Mr. Lamm's. The general character of the country

between my place and Mr. Lamm's is wire grass and black jack and a little lightwood. Mr. Lamm had a conversation with me about the fire. He came to see me three times to see the damages that was done, and I was wanting him to pay me right smart damage, and he said he wasn't able. He settled the matter with me and gave me $10. He spoke to me about the fire and stated that he had colored fellows there and they left for dinner and the wind got up and he told them to secure it, and they never went back to see until it got out. I don't think he was there himself. That is what I heard. Mr. Lamm told me that. He said he left the colored fellows and told them to secure it, and they went to dinner and the fire got out while they were at dinner. He told me that the colored fellows were burning some black jacks for the purpose of getting the ashes."

There was other testimony tending to show that the fire was started in the pasture of the defendant, and burned from there connectedly and continuously to plaintiff's land and there burned his property, for the loss of which plaintiff brings this suit.

Judgment was entered in the case dismissing the action, and plaintiff appealed.

*U. L. Spence for plaintiff.*
*H. F. Seawell for defendant.*

WALKER, J. The court erred in withdrawing the case from the jury and ordering a nonsuit, as there was some evidence under which the plaintiff was entitled to have the issues submitted to a jury. It appears that the fire was originally set in the pasture and there was testimony to the effect that it was in cleared land, but there also was some that woodland adjoined the pasture on one side of it and it was by communication of the fire to the woods that "it got out and spread to the other land." Whether it was negligent in the defendant to have started the fire, by himself or through his agents or servants, in the pasture, for the purpose of burning the blackjacks to get potash, or, having started it, to have failed after the wind rose with such force and violence as to endanger the premises of adjoining proprietors, to keep the fire under control and prevent it from spreading to other land and destroying the timber thereon, was a mixed question of fact and law, the findings of fact being for the jury, and the law applicable to the facts as found by them being solely a question for the court. If the fire was negligently set, or ordinary care was not exercised on the defendant's own land, and this was the proximate cause of the injury to the plaintiff's property, the defendant would be liable. "In general it may be said that a person is not liable for damages caused by a fire in the absence of negligence

in its use. One may lawfully kindle a fire on his own premises for the purpose of husbandry, and he is not liable for injury caused by it to the property of another in the absence of negligence in its management. Ordinary care and caution is all that is required; that is, the fire should be kindled at a proper time, under ordinarily favorable circumstances and in a reasonably prudent manner. The owner will of course be liable for injuries from negligence in starting fires or in not using proper precautions to prevent their spread. He is not at liberty to kindle fires, when on account of the time, manner, or circumstances it appears probable that damage to others will result, such as setting it in a dry time, or without guarding it sufficiently to prevent its spreading. Nor should he set it near the property of another in matter through which it is likely to spread to such property from inflammable matter. It is immaterial whether the negligence consisted in the time or manner of kindling or the means used to prevent its spread, and where a fire is negligently kept it is immaterial in what manner it spreads to the premises of another." 29 Cyc., 460-461. The following instruction to the jury was given in *Higgins v. Dewey,* 107 Mass., 514, a case somewhat similar to this one, and held to be correct, and sufficient: "That to maintain his action the plaintiff must prove that the fire which occasioned the damage to his wood was communicated thereto from the fire which the defendant had set on his own land, and that the defendant in burning his brush did not use due and reasonable care in setting the fire, and in said burning did not use due and reasonable care and diligence to control the fire and prevent its escape and communication to the adjoining and surrounding lands; and that the burden of proof upon both these propositions was upon the plaintiff." The Court there held, by *Justice Gray,* that if a man who negligently sets fire on his own land, and keeps it negligently, is liable to an action at common law for any injury done by the spreading or communication of the fire directly from his own land to the property of another, whether through the air or along the ground, and whether he might or might not have reasonably anticipated the particular manner and direction in which it is actually communicated, citing numerous cases in support of the proposition.

But the case goes beyond this, as N. J. Patterson gave testimony from which the jury may have reasonably inferred, and found, that the escape of the fire from the defendant's premises was due to the negligent failure of his servants or agents in not preventing the escape of the fire and its spread to other land, as he had instructed them to do, after the wind rose and made it dangerous for the fire to be unguarded. Instead of doing so they went to the house for their dinner, and when they returned, it was too late, as the jury may have found, to stop the fire and save plaintiff's property, which was burned.

We said in *Caton v. Toler*, 160 N. C., 104, that the rule of care required of the defendant to prevent the escape of the fire from his own land to that of plaintiff is the ordinary care that a reasonable and prudent person would have exercised under the existing or similar circumstances. In *Averitt v. Murrill*, 49 N. C., 323, a case relied on by the plaintiff, the court charged the jury correctly, as this Court said, that the defendant who had set out the fire would be responsible for his own negligence, of course, and also for that of his agents, or servants, which had caused the injury.

The question of proximate cause was for the jury, under proper instructions from the court, and would depend upon the circumstances under which the fire was started and communicated to plaintiff's land, where his property was destroyed by it. Ordinarily what is the proximate cause of an injury is a question for the jury, aided of course by instructions from the court as to the law bearing upon it. *Railroad Co. v. Kellogg*, 94 U. S., 469.

There was error. The nonsuit will be set aside and a new trial had.

New trial.