JANET LEIGH BENTON, MINOR, BY HER NEXT FRIEND, GLENN BENTON, v. R. W. MONTAGUE AND HUNTLEY HOSIERY COMPANY, INC.

(Filed 20 January, 1961.)

**1. Trial § 22b—**

On motion to nonsuit, the evidence is to be considered in the light most favorable to plaintiff and plaintiff is entitled to every reasonable inference of fact to be drawn therefrom consistent with the allegations of the complaint.

**2. Trial § 22c—**

Discrepancies and contradictions, even in plaintiff's evidence, are for the jury to resolve and do not justify nonsuit.

**3. Fires § 1—**

While G.S. 14-136 was enacted primarily for the protection of property from fire damage, its language is sufficiently broad to cover injury to the person as well, and the act of setting out fire in a field in a more or less thickly populated community adjacent to residential lots upon which children are known to play, without giving notice to adjoining owners and without taking proper precautions to prevent the spread of the fire, constitutes negligence, and if such negligence is the proximate cause of injury, liability results.

**4. Same: Negligence § 4—**

The rule that a person engaging in an activity, with knowledge that it involves peril to others, is liable for injury resulting from his negligence, either of omission or commission while engaged in the activtiy, applies to the setting out of fire.

**5. Fires § 1— Evidence held sufficient to show negligence in setting out fire causing injury to child.**

The evidence tended to show that the individual defendant set out fire in a field covered with dry grass and vegetation, that the wind was blowing towards residential lots, that defendant knew that children of tender years living in houses on these lots habitually played in their back yards, that defendant failed to notify the owners of the lots that he was setting out fire, and that while defendant was tending fires in two places in the field and was engaged in conversation with a neighbor, plaintiff, a three year old child, screamed and was seen at or near the back line of her back yard, contiguous to the field, that her clothing had caught fire and she was seriously burned, and that immediately after the fire it was found that the fire had burned from the field into the yard some 10 to 15 feet in the short grass, and was still smoldering. *Held:* The evidence is sufficient to make out a *prima facie* case of actionable negligence as to the individual defendant.

**6. Master and Servant § 1—**

Evidence tending to show that the owner of a field granted permission to an individual to use a portion of the field for a small garden, and that pursuant to such permission the individual, without knowledge of the owner, set out fire *to* the dry grass and vegetation covering the field, *is held* insufficient to show the relationship of master and servant between the owner and the individual in regard to the setting out of fire, the individual being a mere licensee.

**7. Negligence § 33½—**

The owner of land is not liable for injury caused to third persons by the acts of a licensee unless the licensee creates a nuisance which the owner knowingly permits to continue.

**8. Same: Fires § 2— Evidence held insufficient predicate for liability of owner for injury negligently inflicted by licensee.**

Evidence tending to show that the corporate owner of a field granted permission to an individual to use a small portion thereof for a garden, that the individual set out fire to the dry grass and vegetation on the field on three separate days, that there was no mention of fire in

negotiations for use of the land, that on one occasion an official of the company saw a man tending a small fire in the field, but without evidence that this man was the licensee, *is held* insufficient to fix the owner with knowledge of a nuisance, even conceding the setting out of fire had been sufficiently continuous to constitute a nuisance, and therefore nonsuit was proper as to the owner in an action to recover for the injury to a child burned as a result of the setting out of the fire.

APPEAL by plaintiff from *Farthing, J.,* April 4, 1960, Regular Civil Term, of MECKLENBURG.

This is a tort action for recovery of damages for personal injury. Suit was commenced 2 March 1959.

The complaint, in summary, alleges the following facts:

Plaintiff, Janet Leigh Benton, was three years old at the time of her injury. She is represented herein by Next Friend, her father. She resided with her parents. The corporate defendant, Huntley Hosiery Company, Inc., hereinafter referred to as "Company," had two factory buildings near plaintiff's home. The Company owned a vacant plot or field which extended from one of its plants to the back line of the Benton home lot. On 1 April 1958 the field was covered with dead, dry grass and weeds; it had been in this condition through the preceding winter. The Company and R. W. Montague, the individual defendant, agreed that the "vacant field . . . would be cleared by the individual defendant and the individual defendant would be entitled to use a portion of it for garden purposes." Montague lived near the Bentons and on the same street. On 1 April 1958, despite windy conditions, Montague set fire to and burned the grass and vegetation. In the Benton back yard there was playground equipment. Small children were accustomed to play there, and some played in this back yard on the day of the fire. There was short dry grass in the yard. While Montague was burning the grass and weeds plaintiff came into the back yard and was playing. Montague was standing "some distance away" engaged in conversation, "at which time the fire spread into the playground area at the Benton home and the minor plaintiff was burned from her feet to her head . . . ." She was seriously injured. Defendants were negligent, in that: they knew the burning of the grass and weeds was a hazard to plaintiff and other children, and that the wind increased the peril; they did not give advance notice of the burning, did not maintain watch, and did not provide sufficient help to tend and contain the fire; they violated G.S. 14-136; the burning constituted a perilous condition attractive to children; and the Company knew or should have known that Montague was burning the field in a negligent manner and took

no measures to direct or restrain him. Montague was acting as agent for and was on a joint venture with the Company. The negligence of defendants was the proximate cause of plaintiff's injuries.

At the close of plaintiff's evidence both defendants moved for judgment of involuntary nonsuit. The motions were allowed and the court entered judgment nonsuiting and dismissing the action.

*Henderson & Henderson and William A. Shuford for plaintiff, appellant.*

*Helms, Mulliss, McMillan & Johnston and E. Osborne Ayscue, Jr., for defendant Montague, appellee.*

*Carpenter & Webb, John G. Golding, Fairley & Hamrick and Jack T. Hamilton for defendant Hoisery Company, appellee.*

MOORE, J.  The sole question for decision here is whether the court erred in sustaining defendants' motions for nonsuit.

On a motion for involuntary nonsuit the evidence must be considered in the light most favorable to plaintiff, and plaintiff is entitled to the benefit of every reasonable inference of fact to be drawn therefrom consistent with the allegations of the complaint. *Manufacturing Co. v. Gable,* 246 N.C. 1, 14, 97 S.E. 2d 672. "Discrepancies and contradictions, even in the plaintiff's evidence, are for the jury and not for the court, and do not justify nonsuit." *Keaton v. Blue Bird Taxi Co.,* 241 N.C. 589, 86 S.E. 2d 93.

When we examine the evidence in accordance with these rules we find the following factual situation:

The Benton home lot abuts on the southern line of Peterson Street a distance of 50 feet and extends southwardly a depth of 200 feet. The other lots along Peterson Street have the same dimensions. The Montague lot is on the same side of the street and there are three lots between it and Benton's. There are homes on many of the lots. Montague had lived there seven years, the Bentons five years. The back line of the Company's field is 525 feet in length and runs along the back lines of the above lots, including Benton's and Montague's. Benton's lot is about 175 to 200 feet from one of the Company's factory buildings and about 300 feet from its main office. On 1 April 1960 the field was covered with dead, dry broom sedge, weeds and grass. The Company had had leaves hauled and piled at places in the field for fertilization purposes. There was no fence or other barrier between the field and Benton's yard. There was short, dry grass in the Benton back yard. The Bentons had a "gym. set" in their back yard near the back line to afford a place for children to play. Eight

children, including the Benton children, played there regularly — all of pre-school age, except one. They occasionally played on the piles of leaves in the field. Montague gave the Bentons no notice of his intention to burn off the field on Tuesday, 1 April 1958. Mr. and Mrs. Benton both had jobs. Mrs. Benton on this day left for work about 2:00 P. M., and Mr. Benton left about 3:10 P. M. There was no fire in the field when Mr. Benton left. The children were in charge of a maid, Mary Jackson. Mrs. Sara Wallace came to the house during the afternoon to wash clothes, as she had frequently done. When she came there was a fire in the field. There was a moderate wind blowing toward the Benton house from the direction of the fire. Four or five children were playing in the back yard. Mrs. Wallace began washing and hanging out clothes. Janet (plaintiff) had been taking a nap. She came out of the house to Mrs. Wallace at the clothesline. At this time the maid and the other Benton children were in the house — there were no other children in the back yard. The clothesline is about 75 feet from the field. Mrs. Wallace observed that Janet was wearing one only shoe and told her to go back in the house and put on the other shoe. In about two minutes Janet was heard to scream. At this time the field back of the Benton lot had been burned over. Defendant Montague and a neighbor, Mr. McGrath, were in the field 10 to 30 feet from the Benton line engaged in a conversation and watching two fires. Mr. McGrath had seen children playing in the yard a short time before, and on one occasion Mr. Montague had asked children to get away from the fire. When Janet screamed she was at or near the back line. Her clothing was on fire. She ran through the yard a distance of about 30 feet and began dancing up and down. McGrath ran to her, threw her to the ground, and tore off her clothing. She was severely burned. Montague carried her into the house. An ambulance was called and she was taken to the hospital. After the ambulance left, a rural policeman who had been summoned went into the back yard. He found that fire had burned into the back yard a distance of 10 to 15 feet and was still "smoking and smouldering." Defendant Montague on adverse examination testified in part as follows: "Immediately before she was hurt I was giving my attention to two different locations of grass that had still not burned out. . . . I didn't see any other fire burning. . . . I don't believe there was smoke from the fire I was tending. It was mostly coals of some debris that had been there in the grass. . . . When I first saw that Janet Benton was on fire, she was moving in an angular direction toward her house and she was right on or near the property line between Mr. McGrath's lot, the Benton lot and the

Huntley lot. . . . When I heard her yell and saw her running she was not near any of the fire that I was burning. The fire had previously gone out along that area. She was fairly close to the boundary line between the Huntley property and the Benton lot. At that time I had not observed any fire on Mr. Benton's land. . . . I do not know where Janet Benton caught on fire." An area about 250 feet long and from 60 to 100 feet wide was burned over.

It is provided by statute that "If any person shall intentionally set fire to any grassland, brushland or woodland, except it be his own property, or in that case without first giving notice to all persons owning or in charge of lands adjoining the land intended to be fired, and without also taking care to watch such fire while burning and to extinguish it before it shall reach any lands near to or adjoining the lands so fired, he shall for every such offense be guilty of a misdemeanor . . . ." G.S. 14-136. This section formerly applied only to woodland. *Achenbach v. Johnston,* 84 N.C. 264. But the act was amended to include grassland and brushland. P.L. 1915, c. 243, s. 8. It has been held, in a case involving fire damage to adjoining property, that failure to give the notice required by this statute is negligence *per se. Lamb v. Sloan,* 94 N.C. 534. There the Court said: ". . . (i)f such notice shall not be given, the statute in that case, gives the party injured specially, a right of action, whereby he may recover such actual damage as he shall sustain from the fire, at all events, and without regard to whether or not the defendant was negligent or careless in setting the fire to his own woods and controlling the same." Such far-reaching application of the statute is perhaps inappropriate in the present situation. It must be conceded that the primary purpose of the statute was to protect *property* from fire damage. But the enactment is broad enough to include setting fire to a grass-covered field such as that involved in this case. And where the field, as here, is in a more or less thickly populated community and is adjacent to inhabited lots upon which children are known to play, a violation of the provisions of the statute would constitute negligence. If such negligence is the proximate cause of injury to a child, liability results.

Furthermore, if one engages in activity involving peril to others to the knowledge of the actor, his negligence while so engaged, whether consisting of acts of commission or omission, which results in damage to another is actionable. The activity of setting out, controlling or confining fire is no exception. *Ford v. Blythe Brothers Co.,* 242 N.C. 347, 87 S.E. 2d 879. *Gibbon v. Lamm,* 183 N.C. 421, 111 S.E. 618; *Stemmler v. R.R.,* 169 N.C. 46, 85 S.E. 21; *Mizell v. Manufacturing*

*Co.,* 158 N.C. 265, 73 S.E. 802; *Garrett v. Freeman,* 50 N.C. 78.

In the Ford case, a three-year old child was burned when she walked into a bed of ashes containing live coals. Defendant, who was doing clearing and grading work on the land, knew the premises were frequented by children of tender years but took no precautions to provide them reasonable protection from the bed of live coals. This case involved a technical trespass on the part of the child. The Court said: "In our opinion, it was within the reasonable prevision of the defendant to have foreseen that some injury might result from burning the brush and other debris in the way and manner it did within the area it knew was frequented by children of tender years. . . . Furthermore, there is no question about the ash bed containing live coals beneath the surface, a condition for which the defendant was responsible and which we think it might reasonably have foreseen was likely to cause an injury to a child of tender years, should it walk or run through it."

In the case at bar the following inferences are permissible: Montague knew or in the exercise of reasonable care should have known that children of tender years regularly played in the Benton yard and occasionally in the field. He set fire to the broom sedge, grass and weeds without notice to the Bentons he was to do so on this day. He fired the field when the wind was blowing from the field toward the yard. When plaintiff caught fire he was engaged in conversation with a neighbor, had insufficient help for control of the fire, and was tending fire in two places in the field. The fire a short time before had burned the field up to the Benton line. Plaintiff went to the edge of her yard and there caught fire. It is a reasonable inference that there were smouldering coals at the edge of the yard, and fanned by the wind they set fire to the grass in the edge of the yard and ignited her clothing. There were such coals elsewhere in the field. When she first screamed she was at the edge of the burned-over field. In the excitement no one observed fire in the yard, but a short time later it was found that the fire had burned into the yard some ten to fifteen feet and was still smoking and smouldering. The evidence discloses no other source from which fire could have caught her clothing.

In our opinion there is sufficient evidence to make out a *prima facie* case of actionable negligence as to defendant Montague. We give no consideration to the question of "attractive nuisance" in this case. It does not arise on this record.

Defendant Company permitted the field to become foul and to continue in this condition a long time. Its factory and main office are

adjacent to the field. Indeed, they are at the edge of the field and within a hundred yards of the Benton lot. Montague was not an employee of the Company; he worked for United Equipment and Service. The Company president agreed that Montague might use a portion of the field for a small garden. There was no mention of burning. The field was clearly visible from Old York Road which runs along the edge of the field. The field could not be seen from the main office. At least four officials of the Company, in line of duty, traveled daily along this road between the two factory buildings. One of them, on one occasion, saw a man tending a small fire in the field, but did not investigate. Montague did some burning in the field on three separate days.

In our opinion the evidence is insufficient to support an inference that the relationship of principal and agent, or employer and employee, existed between the Company and Montague. Montague had no specific authority to set fire to the field, and it seems that he was engaged in clearing a greater portion of the field than it was contemplated he would use. Montague was certainly nothing more than a licensee.

"As a general rule, the owner of land is not liable for injury caused by the acts of a licensee unless such acts constitute a nuisance which the owner knowingly suffers to remain. 38 Cyc. 483. The doctrine is pertinently stated in *Rockport v. Granite Co.*, 51 L.R.A., 779: 'In case of work done by a licensee, the work is done on the licensee's own account, as his own business, and the profit of it is his. It is not a case, therefore, where the thing which caused the accident is a thing contracted for by the owner of the land, and for which he may be liable for that reason.'" *Brooks v. Mills Co.*, 182 N.C. 719, 722, 110 S.E. 96.

*Simmel v. New Jersey Coop. Co.* (N.J. 1958), 143 A. 2d 521, presents a situation somewhat analogous to the instant case. Plaintiff, four years old, wandered onto an unenclosed lot in the City of Hoboken. She stumbled on some junk which was on fire on the premises and was burned. She lived in a large housing project across the street from the lot. The project contained about 700 families and many children. Defendant, owner of the lot, had obtained title twenty-one days before the child was injured, and was engaged in transferring its business to a building adjacent to the lot. The lot had been used for some time as a dump for rubbish by City employees. They had dumped rubbish there every day and there were fires on the premises every day. Children were constantly playing there. No fire had been set by defendant or its employees. Unlike the case at bar, plaintiff

was an infant trespasser. There was a verdict and judgment for plaintiff. On appeal, a new trial was ordered. The basis for new trial was the failure of the trial judge in his charge to limit the question of knowledge of conditions on the part of defendant to *actual* knowledge. The following excerpt from the opinion is of especial interest: "It should be recognized, however, that the landowner or occupier is not an insurer of the infant. He has no duty to periodically inspect the premises in order to ascertain whether third persons, themselves trespassers, might have created dangerous artificial conditions thereon. (Citing authorities) The maintenance here is alleged to consist of toleration or sufferance of, or acquiescence in, the acts of others, but before the defendant can be said to have so endured the others' conduct, he must have actual knowledge of the condition created by third persons unrelated to him." There is exhaustive citation and discussion of authorities.

With reference to negligence of a landowner in controlling the activities of third persons on the land, where there is injury to persons outside the premises and where there is no vicarious liability, it is said in Harper and James — The Law of Torts — Vol. 2, s. 27.19, p. 1526: "It is not enough here, of course, to show that the third person's conduct foreseeably and unreasonably jeopardized plaintiff. Plaintiff must also show that the occupier (a) had knowledge or reason to anticipate that the third person would engage in such conduct upon the occupier's land, and (b) thereafter had a reasonable opportunity to prevent or control such conduct." Further, with respect to the liability of a landlord for injury to persons outside the premises on account of the negligent use of premises by the tenant, it is said. "So far as the tenant's use of leased premises goes, he is not the landlord's agent merely because of the lease, and '(o)rdinarily a landlord is not liable for a nuisance created upon premises he has leased where that nuisance did not exist when they were leased or was not a result reasonably to be anticipated from their use for the purpose and in the manner intended.' Moreover, if the contemplated use of the premises 'may or may not become a nuisance according as the tenant exercises ordinary care, or uses the premises negligently, the tenant alone is liable.'" *Ibid*, s. 27.20, p. 1526-7.

In the instant case, it is a permissible inference that the conduct of Montague was a proximate cause of plaintiff's injury. It is doubtful that this conduct, at the time of the injury, had been sufficiently continuous and of such duration to amount to a nuisance. But if the existence of a nuisance is assumed, the evidence is insufficient to fix

defendant Company with knowledge and to show that defendant Company knowingly suffered it to continue. There were three burnings on separate days by Montague. An officer of defendant Company on one occasion saw an unidentified man tending a small fire. There is no evidence that this fire was one of those set by Montague. It might even have been a later occurence. In short, the record does not tend to disclose a state of facts amounting to a nuisance which the landowner knowingly suffered to remain.

As to defendant Montague, the judgment below is reversed.

As to defendant Company, judgment is affirmed.