IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-717

Filed 18 June 2025

Wake County, No. 21 CVS 015667

SHAYA GHASSEMI as the Administrator of the ESTATE OF ARMIN ROSHDI, and SHAYA GHASSEMI, Individually, Plaintiffs,

v.

CENTREX PROPERTIES, INC., HAMED A. ALAWDI, JEHAN A. ALI AHMED, ALI ZAID, and WESTWOOD PROPERTY GROUP, LLC, Defendants.

Appeal by Plaintiff from orders and judgments entered 28 March 2024 and 1 April 2024 by Judge Vince M. Rozier, Jr., in Wake County Superior Court. Heard in the Court of Appeals 12 February 2025.

> *Law Offices of James Scott Farrin, by Coleman M. Cowan, Kaitlyn E. Fudge, and Hannah L. Lavender, for the Plaintiffs-Appellants.*
>
> *Cranfill Sumner LLP, by Steven A. Bader, for Defendants-Appellees Centrex Properties, Inc., and Westwood Property Group, LLC.*

GRIFFIN, Judge.

Plaintiff Shaya Ghassemi, in her capacity as administrator of her husband's estate and in her individual capacity, appeals from the trial court's orders granting summary judgment in favor of Defendants Centrex Properties, Inc, and Westwood Property Group, LLC. Plaintiff contends the trial court erred in summarily dismissing each of her claims for negligence, private and public nuisance, and third-party-beneficiary breach of contract. We affirm.

## I.     Factual and Procedural Background

Armin Roshdi, Plaintiff's husband, passed away following a motor vehicle accident between his vehicle and another vehicle driven by Defendant Hamed A. Alawdi, after Alawdi left the Cornerstone Village shopping center in Cary.

### A. Motor Vehicle Accident

Alawdi, then sixteen years old, attended a car meet with his cousins in a parking lot at Cornerstone Village on 30 June 2021.  On Wednesday nights, large numbers of car enthusiasts would meet in the Cornerstone Village parking lot to show off their customized vehicles, hang out, and sometimes compare their vehicles by street racing.

That evening, other attendees began to compare Alawdi's new sports car with another teen's car.  They insisted Alawdi and the other teen should street race to prove whose car was better.  Though Alawdi had previously agreed to the race, he made excuses that night to avoid racing.  Alawdi left the car meet after fifteen to thirty minutes when his aunt called for him and his cousin to return home.

Alawdi's cousins were driving another vehicle, so he followed them to his aunt's house because he did not know the way there.  On the way to his aunt's house, Alawdi pulled over and waited because he got separated from his cousins.  Forensic evidence showed that, while he waited for his cousins, Alawdi was in communication with a friend who insisted he should have raced at the car meet.  Alawdi then resumed traveling to his aunt's house, following his cousins.  Alawdi was upset that he

"couldn't prove [his] point to the people" at the car meet, and "wanted to test the limits of [his] car [himself] in what [he] thought was a safe area[.]" Alawdi sped up, passed his cousins' vehicle, and accelerated to a speed of nearly ninety miles per hour as he entered the intersection of Creek Park Drive and Morrisville Parkway in Morrisville. Roshdi was entering the intersection from Alawdi's right at that time, and Alawdi did not stop at the stop sign before entering the intersection. Alawdi crashed into the driver's side of Roshdi's vehicle. Roshdi succumbed to injuries sustained in the motor vehicle collision later that night.

**B. Centrex and Westwood Own Cornerstone Village**

At all times relevant to this appeal, Westwood owned and operated Cornerstone Village, and hired Centrex as the property manager of Cornerstone Village. In January 2021, Cary police notified Centrex it had received multiple reports over the preceding six months that car meets were occurring in the Cornerstone Village parking lot on Wednesday nights. Centrex consulted with Cary police, then responded to the reports by posting "no trespassing" and "no loitering or soliciting" signs in the parking lot and had their employees visit the Cornerstone Village parking lot on Wednesday evenings to monitor activity. The employees did not report any car meets during January and February of 2021, and stopped monitoring the lot on Wednesdays thereafter.

In March 2021, Charles Butler, a Cary resident who lived near Cornerstone Village, called Centrex's property manager and informed him that the car meets were

still occurring in the parking lot. Butler told Centrex that drivers often sped recklessly down nearby roads when leaving the car meets. Butler also contacted Cary police, who informed him that they had already spoken with Centrex but could not otherwise intervene with car meets occurring on private property without Centrex's approval. David Dilts, another Cary resident, also contacted both Centrex and Cary police to complain about the Cornerstone Village car meets in June 2021. Centrex told Dilts that it had given Cary police permission to intervene in the car meets, but Cary police told Dilts that they did not have the property manager's permission to intervene.

On 1 July 2021, Richard Kim, an attorney for H Mart Companies, Inc., contacted Centrex to complain about the car meets. H Mart was an "anchor tenant" in Cornerstone Village, and, on behalf of H Mart, Kim expressed a desire for the car meets to be stopped. Centrex then met with Cary police to give them explicit authority to intervene in their parking lot, and began to dispatch private security to the parking lot on Wednesday nights.

## C. Procedural Timeline

On 18 November 2021, Plaintiff filed a complaint commencing this action against Alawdi,[1] the owners of Alawdi's vehicle, and Centrex. Plaintiff later amended

---

[1] Plaintiff also named the owners of the sports car Alawdi was driving, Jehan A. Ali Ahmed and Ali Zaid, as defendants. Zaid has been dismissed from this case. Alawdi and Ahmed are not parties to this appeal.

her complaint to add Westwood as a defendant. Relevant to this appeal, the amended complaint alleged negligence claims—negligence, premises liability, and loss of consortium—against Centrex and Westwood. On 29 June 2023, Plaintiff filed a motion for leave to amend her complaint to add claims for nuisance and third-party breach of contract against Centrex and Westwood.

On 21 August 2023, Centrex and Westwood filed a motion for summary judgment on Plaintiff's negligence claims. The trial court held a hearing on 4 October 2023 to hear Plaintiff's motion for leave to amend and Centrex and Westwood's motion for summary judgment. On 11 October 2023, the trial court entered a written order allowing Plaintiff to amend her complaint and deeming the second amended complaint formally filed as of June 29. The following day, the trial court entered a written order granting Centrex and Westwood's motion for summary judgment against Plaintiff's negligence claims.

On 25 October 2023, Centrex and Westwood filed an answer to Plaintiff's second amended complaint. On 31 October 2023, Centrex and Westwood filed a motion for summary judgment against the claims for nuisance and breach of contract added against them.

On 16 January 2024, Plaintiff filed a motion for reconsideration of the trial court's 12 October 2024 order granting Centrex and Westwood's motions for summary judgment against her negligence claims. On 25 March 2024, the trial court held a hearing on Plaintiff's motion for reconsideration and on Centrex and Westwood's

second motion for summary judgment. On 1 April 2024, the trial court entered written orders granting Centrex and Westwood summary judgment against Plaintiff's added claims for nuisance and breach of contract, and denying Plaintiff's motion for reconsideration. The trial court certified each of its orders for immediate appellate review under Rule 54(b) of the North Carolina Rules of Civil Procedure.[2]

Plaintiff timely appeals.

## II. Analysis

Plaintiff appeals from the trial court's orders granting Centrex and Westwood's motions for summary judgment against each of her claims for negligence, private and public nuisance, and breach of contract. We address the trial court's ruling as to each claim below.

### A. Interlocutory Review

Plaintiff appeals from the trial court's orders fully resolving each of her claims against Centrex and Westwood, but her claims against Alawdi and Ahmed are still unresolved. Plaintiff's appeal is therefore interlocutory, *see Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted), and ordinarily not ripe for immediate appeal, *Travco Hotels, Inc. v. Piedmont Nat. Gas Co.*, 332 N.C.

---

[2] On 28 March 2024, the trial court filed an amended order granting summary judgment against Plaintiff's claims for negligence against Centrex and Westwood, amending the prior 12 October 2023 order on the same to include a Rule 54(b) certification that there is no just reason to delay immediate appeal. Plaintiff timely appeals from the amended order. *See Doe v. City of Charlotte*, 273 N.C. App. 10, 20, 848 S.E.2d 1, 9 (2020) (discussing interlocutory appealability of retroactive Rule 54(b) certification through newly filed amended orders).

288, 291, 420 S.E.2d 426, 428 (1992) (citation omitted). However, the trial court certified each of the orders from which Plaintiff appeals for immediate appellate review under Rule 54(b) of the North Carolina Rules of Civil Procedure. N.C. R. Civ. P. 54(b) (2023); *DKH Corp. v. Rankin-Patterson Oil Co.*, 348 N.C. 583, 585, 500 S.E.2d 666, 668 (1998) ("Rule 54(b) provides that in an action with multiple parties . . . , if the trial court enters a final judgment as to a party . . . and certifies there is no just reason for delay, the judgment is immediately appealable."). Plaintiff's appeal is properly before this Court.

**B. Summary Judgment**

"This Court reviews decisions arising from trial court orders granting or denying motions for summary judgment using a de novo standard of review." *Cummings v. Carroll*, 379 N.C. 347, 358, 866 S.E.2d 675, 684 (2021) (citation omitted). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c) (2023). "An issue is 'genuine' if it can be proven by substantial evidence and a fact is 'material' if it would constitute or irrevocably establish any material element of a claim or a defense." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citation omitted). "There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim or cannot

surmount an affirmative defense which would bar the claim.*" Harrison v. City of Sanford*, 177 N.C. App. 116, 118, 627 S.E.2d 672, 675 (2006) (citation omitted). "When evaluating a trial court's decision to grant or deny a summary judgment motion in a particular case, we view the pleadings and all other evidence in the record in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor." *Beavers v. McMican*, 385 N.C. 629, 633, 898 S.E.2d 690, 694 (2024) (citations and internal quotation marks omitted).

### 1. *Negligence*

Plaintiff contends the trial court erred by summarily dismissing her negligence claims against Centrex and Westwood. A claim for negligence has three essential elements: "(1) a legal duty owed by the defendant to the plaintiff, (2) a breach of that legal duty, and (3) injury proximately caused by the breach." *Keith v. Health-Pro Home Care Servs., Inc.*, 381 N.C. 442, 450, 873 S.E.2d 567, 574 (2022) (citations omitted). These elements share a recursive relationship; "[n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care[,]" and foreseeability "depends on the facts of the particular case." *Stein v. Asheville City Bd. Of Educ.*, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006) (citations omitted). "[I]t is only in exceptional negligence cases that summary judgment is appropriate, since the standard of reasonable care should ordinarily be applied by the jury under appropriate instructions from the court." *Ragland v. Moore*, 299 N.C. 360, 363, 261 S.E.2d 666, 668 (1980) (citation omitted).

To establish a legal duty owed by Centrex and Westwood in this case, Plaintiff directs us to the standard adopted by our Supreme Court in *Benton v. Montague*, 253 N.C. 695, 117 S.E.2d 771 (1961). In *Benton*, a pre-school-aged child was injured when the defendant allowed a licensee to clear property adjacent to the child's family's property, and the licensee chose to set a fire which spread into an area where the child was playing. *Id.* at 699–700, 117 S.E.2d at 774. The plaintiff, the injured child's family, argued the defendant was negligent in allowing the licensee's actions on their property. *Id.*

Our Supreme Court began its analysis by concluding with certainty that the licensee acted negligently, and acknowledged well-established precedent that, "'[a]s a general rule, the owner of land is not liable for injury caused by the acts of a licensee unless such acts constitute a nuisance which the owner knowingly suffers to remain.'" *Id.* at 702, 117 S.E.2d at 776 (citation omitted). With that in mind, the Supreme Court in *Benson* established a two-part analysis whereby a landowner could be held liable for the torts of his licensee which cause injury off his property:

> With reference to negligence of a landowner in controlling the activities of third persons on the land, where there is injury to persons outside the premises and where there is no vicarious liability . . . [,] [i]t is not enough . . . to show that the [licensee's] conduct foreseeably and unreasonably jeopardized [the] plaintiff. [The p]laintiff must also show that the [landowner]
>
> (a) had knowledge or reason to anticipate that the [licensee] would engage in such conduct upon the [landowner]'s land, and

- 9 -

(b) thereafter had a reasonable opportunity to prevent or control such conduct.

*Id.* at 703, 117 S.E.2d at 777 (citations and internal marks omitted).

Plaintiff's allegations ultimately contend that the *Benton* analysis applies here because Centrex and Westwood were aware that licensees of their parking lot were holding recurring car meets there, knew or should have known that allowing the car meets to occur would cause motor vehicle accidents two or more miles away from their property, and had a duty to stop the car meets to prevent those remote accidents. Plaintiff also advances two additional avenues through which Centrex and Westwood had a duty to prevent the car meets: expert opinion testimony introducing a duty in Centrex and Westwood's area of work, and a factor-balancing test for the imposition of a duty.

Nonetheless, even if we were to hold that the *Benton* analysis, or one of Plaintiff's other theories, created a duty of care for Centrex and Westwood under these circumstances, Centrex and Westwood are not liable in negligence because Alawdi's conduct and the resulting injury to Roshdi were not reasonably foreseeable. The facts of this case, in the light most favorable to Plaintiff, present a tenuous relationship between the events occurring at Cornerstone Village and the motor vehicle accident between Alawdi and Roshdi, and we are unwilling to create a duty where the resulting harm was not a foreseeable result of the duty's alleged breach. *See Stein*, 360 N.C. at 328, 626 S.E.2d at 267 ("No legal duty exists unless the injury

to the plaintiff was foreseeable and avoidable through due care." (citation omitted)).

To succeed on a negligence claim, the plaintiff must show the injury complained was proximately caused by the defendant's breach of duty. *Keith*, 381 N.C. at 450, 873 S.E.2d at 574. A proximate cause is one "'that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed.'" *Ward v. Carmona*, 368 N.C. 35, 770 S.E.2d 70, 72 (2015) (quoting *Mattingly v. N.C. R.R. Co.*, 253 N.C. 746, 750, 117 S.E.2d 844, 847 (1961)). "It is sufficient if by the exercise of reasonable care the defendant might have foreseen that some injury would result from his conduct or that consequences of a generally injurious nature might have been expected." *Slaughter v. Slaughter*, 264 N.C. 732, 735, 142 S.E.2d 683, 686 (1965) (citations omitted). Though, "[a] defendant is not required to foresee events which are merely possible but only those which are reasonably foreseeable." *Hairston v. Alexander Tank & Equip. Co.*, 310 N.C. 227, 234, 311 S.E.2d 559, 565 (1984) (citation omitted).

"Whether the harm was foreseeable depends on the particular facts." *Fussell v. N.C. Farm Bureau Mut. Ins. Co.*, 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010) (citation omitted). "It is only when the facts are all admitted and only one inference may be drawn from them that the court will declare whether an act was the proximate cause of an injury or not." *Conley v. Pearce-Young-Angel Co.; Rutherford v. Pearce-Young-Angel Co.*, 224 N.C. 211, 214, 29 S.E.2d 740, 742 (1944) (citations omitted).

Plaintiff contends that her negligence claim was erroneously dismissed because the evidence showed a genuine issue of material fact exists regarding whether the motor vehicle accident and Roshdi's death were foreseeable results of a "series of events which began on [Centrex and Westwood's] property as a result of the dangerous condition they allowed to persist." We disagree.

Contrary to Plaintiff's assertion, the evidence shows the motor vehicle accident did not occur in continuous sequence from an event that began at Cornerstone Village or that was otherwise inexorably connected to the car meet at Cornerstone Village. Alawdi chose to "test the limits of [his] car [himself] in what [he] thought was a safe area," after continued instigation that he should race another teen. His act of reckless driving began and ended approximately two miles away from Cornerstone Village. Further, the record reflects Alawdi received text messages from other teens before and after his attendance at the car meet, all of which factored into his desire to test the limits of his vehicle. Plaintiff does not contend that a race began at Cornerstone Village, or that Alawdi was racing against the teen he was dared to race while attending the car meet. Based on the undisputed facts of this case, Alawdi could have elected to test his sports car without attending the car meet.

We hold Alawdi's reckless conduct two miles away from Cornerstone Village was not a reasonably foreseeable result proximately caused by Centrex and Westwood's decisions. Our holding is based on the specific facts of the case before us. The attenuated relationship between Alawdi's actions and the car meets and the

distance between the intersection where the motor vehicle accident occurred and Cornerstone Village both weigh against the foreseeability of the accident. Under the facts of this case, we cannot hold that Centrex and Westwood had a duty to prevent a frustrated driver from causing a motor vehicle accident two miles away.

### 2. *Nuisance*

Plaintiff next contends "[t]he trial court erred in summarily dismissing Plaintiff's nuisance claim against [] Centrex and Westwood[,]" arguing Centrex and Westwood committed both private nuisance *per accidens* and public nuisance.

"'The term nuisance means literally annoyance; anything which works hurt, inconvenience, or damage, or which essentially interferes with the enjoyment of life or property.'" *Holton v. Nw. Oil Co.*, 201 N.C. 744, 747, 161 S.E. 391, 393 (1931) (citation omitted). "A nuisance may be both public and private." *Swinson v. Cutter Realty Co.*, 200 N.C. 276, ___, 156 S.E. 545, 547 (1931) (citation omitted). Private nuisance *per accidens* occurs when an act, omission, or thing is not a nuisance at all times, "but may become so by reason of its locality and surroundings." *Id.* at 279, 156 S.E. at 547. "'A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights.'" *Twitty v. State*, 85 N.C. App. 42, 49, 354 S.E.2d 296, 301 (1987) (quoting *State v. Everhardt*, 203 N.C. 610, 617, 166 S.E. 738, 741–42 (1932)). In either case, liability turns on whether the defendant's conduct was a reasonable use of his property when weighed against the resulting harms. *See Morgan v. High Penn Oil Co.*, 238 N.C. 185, 193, 77

S.E.2d 682, 689 (1953) (citations omitted); *Swinson*, 200 N.C. at 279, 156 S.E. at 547.

Our Courts have frequently held, "where the damage the plaintiffs complained of arose out of single physical injury, instead of an on-going injury, the action sounds in negligence and not nuisance." *Wagner v. City of Charlotte*, 269 N.C. App. 656, 671, 840 S.E.2d 799, 809 (2020) (citation modified); *see Boldridge v. Crowder Const. Co.*, 250 N.C. 199, 202, 203, 108 S.E.2d 215, 217, 218 (1959) (holding "the evidence in this case was insufficient to establish [the] plaintiff's right to recover on the basis of nuisance, either public or private[,]" where the evidence disclosed "a single physical injury of the type sustained by the plaintiff" (citations omitted)). "[T]aking the evidence according to its reasonable inferences, the nuisance, if it may be called such, was negligence-born, and must, in the legal sense, make obeisance to its parentage." *Butler v. Carolina Power & Light Co.*, 218 N.C. 116, 121, 10 S.E.2d 603, 606 (1940) (holding "no transmutation of negligence to nuisance" in wrongful death action where the defendant's improperly maintained electrical wires electrocuted the plaintiff's husband).

The trial court did not err in summarily dismissing Plaintiff's claim for nuisance, both private and public, because Plaintiff does not attest to facts which could support each essential element of a nuisance claim. Plaintiff contends that Centrex and Westwood have allowed the car meets to repeatedly occur, interfering with the enjoyment of their property and unreasonably endangering the public. However, Plaintiff does not assert that she, or Roshdi, suffered continuous injury

from the car meets occurring at Cornerstone Village. Rather, her nuisance claim submits a single physical injury, Roshdi's death, resulting from a single occurrence, Alawdi's conduct on 30 June 2021, and requests only compensation for expenses and suffering incurred because of Roshdi's death. Notably, Plaintiff does not request abatement of the alleged nuisance.[3] It is conceivable that a plaintiff living near Cornerstone Village could complain of on-going injuries stemming from the weekly car meets, but Plaintiff has not presented those circumstances in the present case.

### 3. *Breach of Contract*

Plaintiff's final argument asserts "[t]he trial court erred in summarily dismissing Plaintiff's third-party beneficiary breach of contract claim against [] Centrex and Westwood."

This Court has often affirmed that, to assert their rights as third-party beneficiary of a contract, a plaintiff must show: "(1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the third party." *Town of Belhaven, NC v. Pantego Creek, LLC*, 250 N.C. App. 459, 471, 793 S.E.2d 711, 719 (2016) (citations and internal marks omitted). "Ordinarily the determining

---

[3] Plaintiff presents a claim for common law nuisance. We are cognizant of North Carolina's statute granting a statutory private right of action for public nuisance. Section 19-2.1 of the North Carolina General Statutes creates a right of action to sue for abatement of the nuisance. *See* N.C. Gen. Stat. § 19-2.1 (2023) (allowing "any private citizen of the county [to] maintain a civil action in the name of the State of North Carolina to abate a [public] nuisance . . . , perpetually to enjoin all persons from maintaining the same").

factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract." *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651, 407 S.E.2d 178, 181 (1991) (citations and internal quotations marks omitted). The mere fact that a contract refers to a third-party does not inherently show the parties' intent to make the third-party a direct beneficiary of the contract. *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 336–37, 641 S.E.2d 721, 724 (2007). The pinnacle question is "'whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts.'" *Raritan River Steel Co.*, 329 N.C. at 651, 407 S.E.2d at 181 (citation omitted). "It is not sufficient that the contract does benefit [the third party] if in fact it was not intended for his direct benefit." *Vogel v. Reed Supply Co.*, 277 N.C. 119, 128–29, 177 S.E.2d 273, 279 (1970) (citation omitted).

Plaintiff argues the existence of two contracts to which they were third-party beneficiaries. First, Westwood is party to lease agreements with the commercial tenants in Cornerstone Village, which bestow on Westwood the responsibility for "providing security and on-and-off site traffic control" on the premises. Second, the services agreement between Centrex and Westwood states that Centrex would "perform and observe [Westwood's] obligations under the lease agreements." Neither party disputes the existence and validity of these agreements.

Plaintiff argues each of these contracts "explicitly contemplate[s] the existence of Plaintiff as a member of the general public and contain[s] provisions which are

intended for the public's direct, and not merely incidental, benefit." In support, Plaintiff points to language in Westwood's lease agreements which require its commercial tenants to "provide and keep in force, *for the protection of the general public* and [Westwood], liability insurance against all claims, for bodily injuries or death upon or near" Cornerstone Village. (Emphasis added). Plaintiff interprets this provision to mean that "members of the general public, including individuals located not directly on but near the premises, were specifically considered within and intended to benefit from the parties' agreement."

We disagree with Plaintiff's interpretation. Beyond recitations of black-letter law setting out North Carolina's observation of breach of contract claims by third-party beneficiaries, Plaintiff presents no law which specifically bolsters her interpretation of the contracts. Likewise, this Court can ascertain no North Carolina precedent which supports the notion that the terms within a lease agreement between two private entities specifically intended to bestow rights upon third-parties the lessee may serve.[4] Lease agreements, by their nature, are ordinarily drafted to make explicit the rights and duties of the parties in the lessor-lessee relationship,

---

[4] Other jurisdictions have, however, held that a lease agreement naturally intends to benefit only the parties to the lease and serves to establish their contractual duties to one another. *See Brunsell v. City of Zeeland*, 651 N.W.2d 388, 391 (Mich. 2002) (holding the plaintiff was not an intended third-party beneficiary of a lease agreement which required maintenance "as may be necessary for the public safety," because the "public as a whole is too expansive a group to be considered 'directly' benefitted by a contractual promise"); *Wood v. Centermark Props., Inc.*, 984 S.W.2d 517, 527 (Mo. Ct. App. 1998) (holding that term in lease agreement between a commercial tenant and a landlord which required the landlord to provide security services did not intend to benefit the tenant's employee).

and are not created for the benefit of a third-party.

In this case, the language "for the protection of the general public and [Westwood]" describes the liability insurance that Westwood's commercial tenants must provide as a duty of its relationship with Westwood, to safeguard Westwood against liabilities that may arise throughout the commercial tenant's use of the leased property. This term intended to set out only Westwood and the commercial tenant's duties and rights with respect to each other. *See Town of Belhaven, N.C. v. Pantego Creek, LLC*, 250 N.C. App. 459, 472, 793 S.E.2d 711, 720 (2016) (holding that a contract giving the defendant the right to manage and operate a hospital was for the exclusive benefit of the parties to the contract); *Brunsell*, 651 N.W.2d at 391 ("[A]n objective analysis of the contract at issue indicates that the contractual provision at issue was intended to delineate the obligations of the [contractual parties] with regard to the premises, not to directly benefit third parties."). The trial court did not err in dismissing Plaintiff's claim because neither Plaintiff nor her husband were intended third-party beneficiaries of the contracts existing between Centrex and Westwood.

### III.   Conclusion

The trial court did not err by granting summary judgment in favor of Defendants Centrex and Westwood, and dismissing each of Plaintiff's claims against them, because Plaintiff failed to forecast genuine issues of fact regarding each claim.

AFFIRMED.

Judges TYSON and HAMPSON concur.