RARITAN RIVER STEEL CO. v. CHERRY, BEKAERT & HOLLAND

[329 N.C. 646 (1991)]

RARITAN RIVER STEEL CO. v. CHERRY, BEKAERT & HOLLAND, A General
    Partnership; GARY J. WOLFE; S. DONALD BLANTON; HERMAN O.
    COLEMAN; C. CLINE COMER; W. DOUGLAS SERRISS; JOE R. NANTZ;
    CLARENCE EUGENE WILLIAMS, SR.; PRESTON CLARK; HOWARD J.
    KIES; HARRACE M. ROLNICK; PETER A. CAPRISE; JERRY P. FOX;
    ERIC C. PRESSLEY; R. TURNER RIVENBARK; WAYNE COMSTOCK; TONY
    W. WARFFORD; WIT BROWN; LOUIS EDDIE DUTTON; WILLIAM LANIER,
    JR.; DAVID WHALEY; T. ERNEST SIEVELKORN; JAMES LANEY;
    HAROLD B. HENDERSON; ALBRY SHAW; J. ARLEY ROWE, JR.; WILLIAM
    BLANKENSHIP; ROBERT HOLMAN; DON HOLLAND; ANTHONY G.
    CAMPAS; JOHN COMPTON; DONALD LEONARD; MICHAEL NEWHOUSE;
    CHARLES WEATHERSBY; WALLACE PERMENTER; CLYDE FUSSELL;
    WAYNE BUSEY; JERRY LLOYD; DAVID BOLTON; JOHN CORDELL;
    RALPH DAVIS; HARRY STOLTE, JR.; CHARLES BROWN; WAYNE GRIER;
    HARRY GRIGGS, JR.; RALPH HAROLD; FRANCES KOGER; KENNETH
    LITTON, JR.; CHARLES YOUNG; BOBBY BLACK; WILLIAM FLURRY;
    JACK MOODY; RUDOLF OHME, JR.; E.A. THOMAS, JR.; RAYMOND
    WARCO; E.C. BLACKBURN; ANTHONY MORRIS; W.H. PETERSON;
    J. DOMINQUEZ; ROBERT HARTER; LLOYD BRAMMER; HENRY
    COLBRETH; PATRICK CALLEN; W.H. HUFF; JEFFRY McCLANATHAN;
    RICHARD ROBERTS; WILBURN ROBERTSON; GEORGE TORNWALL; and
    ROBERT WHITE, Partners

No. 15A91

(Filed 14 August 1991)

## Accountants § 20 (NCI4th) — audited financial statement — liability to third party — summary judgment for defendants

The trial court correctly granted summary judgment for defendant acccountants in an action by a third-party creditor which relied upon a report of a 1981 financial statement prepared by defendants in extending credit to a company which subsequently entered bankruptcy. Both IMC, the company audited, and the accounting firm testified that there was no intent to benefit unsecured trade creditors; plaintiff was not aware that the audit was being performed; the partner in charge of the audit testified that IMC had not informed the accounting firm of any intention to provide copies of the audited financial statement to trade creditors; the accounting firm did not have knowledge that the audited financial statements would be provided to Dun & Bradstreet; testimony of IMC's chief financial officer indicated that it was IMC's policy at that time not to distribute financial statements to trade creditors; only one trade creditor received a copy of the 1981 financial statements; the contract between IMC and the accounting firm never

**RARITAN RIVER STEEL CO. v. CHERRY, BEKAERT & HOLLAND**

[329 N.C. 646 (1991)]

designated plaintiff as an intended beneficiary of the contract; the accounting firm's services were rendered directly to IMC and not to plaintiff; and plaintiff never saw a copy of the 1981 financial statement. Based upon the entire record, the plaintiff was not an intended third-party beneficiary of the contract between the audited company and the accounting firm.

**Am Jur 2d, Accountants § 19.**

**Liability of public accountant to third parties. 46 ALR3d 979.**

APPEAL as of right pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 101 N.C. App. 1, 398 S.E.2d 889 (1990), reversing the judgment of *Sanders, J.,* issued 8 November 1989, *nunc pro tunc* to 27 October 1989, in Superior Court, MECKLENBURG County. Heard in the Supreme Court 9 April 1991.

*Grier and Grier, P.A., by Joseph W. Grier, III, and J. Cameron Furr, Jr., for plaintiff-appellee.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, by James G. Billings, Mark A. Ash, and Michael D. Hill, for defendant-appellants.*

MEYER, Justice.

The issue we are presented with in this case is whether a trade creditor to a closely held corporation is a third-party beneficiary to the corporation's contract with an accounting firm for the performance of an audit. The accounting firm agreed to perform an audit "in conformity with generally accepted auditing standards," and furnished the audit to the corporation. The trade creditor did not see the audit but reviewed a summary of it published in a Dun & Bradstreet report, which apparently overstated the corporation's actual financial position. Allegedly on the basis of the Dun & Bradstreet summary of the audit, the trade creditor extended additional open credit to the corporation, which later filed for bankruptcy. Much of the trade credit was subsequently discharged in the bankruptcy proceeding. The trade creditor sued the defendant auditing firm for damages alleging, *inter alia*, that it was a third-party beneficiary of the auditing contract. The trial court granted

summary judgment for the defendants. The Court of Appeals reversed the entry of summary judgment for the defendants. We now reverse the decision of the Court of Appeals and remand the case for reinstatement of the trial court's order of summary judgment for the defendants.

Cherry, Bekaert & Holland and its partners (hereinafter the "accounting firm"), defendants herein, signed an engagement letter dated 22 June 1981 with Intercontinental Metals Corporation (hereinafter "IMC"). IMC is a holding company which, on 30 September 1981, had five shareholders, some of whom were officers of the company. The engagement letter provided:

> We will examine the consolidated balance sheets of Intercontinental Metals Corporation and Intercontinental Metals Trading Corporation at September 30, 1981 and the related consolidated statements of earnings, retained earnings, and changes in financial position for the year then ended, for the purpose of expressing an unqualified opinion on the fairness of the presentation of these financial statements in conformity with generally accepted accounting principles applied on a consistent basis. If we discover that we cannot issue an unqualified opinion, we will discuss the reasons with you before submitting a different kind of report. . . .

> As you know, management has the primary responsibility for properly recording transactions in the records, for safeguarding assets and for preparing accurate financial statements. Our basic audit function is to add reliability to those financial statements.

> Our examination will be conducted in accordance with generally accepted auditing standards.

Raritan River Steel Company, the plaintiff herein, sold raw steel and was a major trade creditor of IMC. In January 1982, IMC had a $1.5 million line of credit with plaintiff, which had obtained copies of IMC's audited financial statements for the years 1978 and 1979 prepared by the accounting firm but did not have access to the audited statements for 1981, the year in question.

In January 1982, the accounting firm issued a qualified opinion concerning IMC's financial statements for the period ending 30 September 1981 (the 1981 financial statements), which indicated uncertainty as to the outcome of a $20 million dispute with a foreign

supplier. Although the plaintiff asked IMC twice for a copy of IMC's 1981 financial statements, once in February and again in April or May of 1982, its latter request was expressly denied. However, in February 1982, IMC, as was its previous policy, allowed Dun & Bradstreet to review its audited financial statements in IMC's offices. The ensuing summary reports published by Dun & Bradstreet in April and May of 1982 provided in pertinent part as follows:

| | Fiscal Consolidated Sep 30 1979 | Fiscal Consolidated Sep 30 1980 | Fiscal Consolidated Sep 30 1981 |
|---|---|---|---|
| | . . . . | | |
| Worth | 3,129,325 | 4,693,000 | 6,359,369 |
| | . . . . | | |

Submitted FEB 25 1982 by Wilburn V Robinson, V Pres & Treas. Prepared from statement(s) by Accountant: Cherry, Bekaert & Holland, CPA.

ACCOUNTANTS OPINION: "Accountants indicate that the figures of Sep 30 1981 present fairly the financial position of the company in conformity with accepted accounting principles subject to the following qualifications or exceptions: the ultimate outcome of a dispute with a foreign supplier is not presently determinable."

The Dun & Bradstreet report, which also contained other summarized financial information, was the only access that plaintiff had to IMC's 1981 financial statements. After reviewing the Dun & Bradstreet report, and allegedly in reliance on IMC's financial condition as reported therein, the plaintiff extended additional open credit to IMC in excess of its previously established limit of $1.5 million.

In December 1982, IMC filed for bankruptcy protection. At that time, plaintiff was owed $2.2 million by IMC. From the bankruptcy proceedings, the plaintiff received only $511,143.60 and argues that the financial statements, if properly prepared, should have indicated a substantial negative net worth for IMC on 30 September 1981.

The procedural history of this case is as follows. The plaintiff filed suit in Superior Court, Mecklenburg County, on 13 February

RARITAN RIVER STEEL CO. v. CHERRY, BEKAERT & HOLLAND

[329 N.C. 646 (1991)]

1985, alleging two theories of recovery. First, it contends that the accounting firm "failed to use the ordinary, usual and reasonable standard of care and competence exercised by members of the accounting profession . . . and were grossly negligent and careless in failing to protect the interests of IMC and of its creditors, in violation of a duty owed to IMC, plaintiff and other creditors." By its second theory, the plaintiff contends that it is a third-party beneficiary to the contract between the accounting firm and IMC and is entitled to recover for damages that were sustained as a result of the breach of that contract. On 9 May 1985, the trial court granted the defendants' motion to dismiss both claims for failure to state a claim upon which relief can be granted. The Court of Appeals reversed the trial court. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 79 N.C. App. 81, 339 S.E.2d 62 (1986) ("*Raritan I*"). On appeal, this Court reversed the Court of Appeals, effectively holding that the plaintiff had not stated a claim for relief on its negligence theory, but declined to review the plaintiff's claim on its contract theory. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988). On remand, the trial court granted summary judgment for the defendants on the plaintiff's contract claim on 8 November 1989, *nunc pro tunc* to 27 October 1989. The Court of Appeals again reversed, with Judge Duncan dissenting. *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 101 N.C. App. 1, 398 S.E.2d 889 (1990) ("*Raritan II*"). The defendants appeal to this Court as of right from the dissenting opinion.

In this case, we are reviewing the trial court's grant of a motion for summary judgment in favor of the defendants. Summary judgment is only proper where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. N.C.G.S. § 1A-1, Rule 56(c) (1990). On appellate review of the order for summary judgment, we take the evidence in the light most favorable to the nonmoving party. *Hinson v. Hinson*, 80 N.C. App. 561, 343 S.E.2d 266 (1986). After reviewing the forecast of evidence in the record, and for the reasons that follow, we agree with the trial court that there is no genuine issue of material fact present in this case and hold that the plaintiff was not an intended third-party beneficiary of the contract between the accounting firm and IMC.

This Court has said the following about the rights of a third party to recover under a contract:

**RARITAN RIVER STEEL CO. v. CHERRY, BEKAERT & HOLLAND**

[329 N.C. 646 (1991)]

North Carolina recognizes the right of a third-party benficiary [sic] to sue for breach of a contract executed for his benefit. *Vogel v. Supply Co.*, 277 N.C. 119, 177 S.E. 2d 273 (1970); *American Trust Co. v. Catawba Sales & Processing Co.*, 242 N.C. 370, 88 S.E. 2d 233 (1955); *Boone v. Boone*, 217 N.C. 722, 9 S.E. 2d 383 (1940). Ordinarily " 'the determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract. The real test is said to be whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts.' 17 Am. Jur. 2d, *Contracts* § 304. It is not sufficient that the contract does benefit him if in fact it was not intended for his direct benefit." *Vogel v. Supply Co., supra,* 277 N.C. at 128, 177 S.E. 2d at 279.

*Snyder v. Freeman*, 300 N.C. 204, 220, 266 S.E.2d 593, 603-04 (1980).

This Court has adopted the analysis of the Restatement (Second) of Contracts for purposes of determining "whether a beneficiary of an agreement made by others has a right of action on that agreement." *Snyder*, 300 N.C. at 221, 266 S.E.2d at 604 (using identical 1973 version of Restatement); *see also Vogel v. Supply Co. and Supply Co. v. Developers, Inc.*, 277 N.C. 119, 177 S.E.2d 273 (1970).

The Restatement (Second) of Contracts provides as follows:

§ 302. Intended and Incidental Beneficiaries

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
>
> (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 (1981).

The Restatement (Second) recognizes only two types of beneficiaries—intended and incidental—but a review of the comment to the Restatement indicates that the drafters intended to retain the distinction between creditor and donee beneficiaries. "The type of beneficiary covered by Subsection (1)(a) is often referred to as a 'creditor beneficiary,' " while the type of beneficiary covered by subsection (1)(b) "is often referred to as a 'donee beneficiary.' " *Id.* comments b, c. The drafters note that a donee beneficiary need not be the object of a "gift" but might also be the intended beneficiary of a "right." *Id.* reporter's note. If no intent to benefit is found, then the beneficiary is considered an incidental beneficiary, and no recovery is available.

Having established that intent to benefit is the determining factor, we must consider the nature of the evidence which is admissible to prove intent. The Court, in determining the parties' intentions, should consider circumstances surrounding the transaction as well as the actual language of the contract. *Id.; see also Bolton Corp. v. State of North Carolina,* 95 N.C. App. 596, 383 S.E.2d 671 (1989), *disc. rev. denied,* 326 N.C. 47, 389 S.E.2d 85 (1990). We further note that " '[w]hen a third party seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.' " *Chemical Realty Corp. v. Home Fed'l Savings & Loan,* 84 N.C. App. 27, 34, 351 S.E.2d 786, 791 (1987) (quoting *Lane v. Surety Co.,* 48 N.C. App. 634, 638, 269 S.E.2d 711, 714 (1980), *disc. rev. denied,* 302 N.C. 219, 276 S.E.2d 916 (1981)).

In a leading North Carolina case involving a third-party beneficiary claim, this Court held that the plaintiff had adequately stated a claim that an agreement by certain officers, directors, and shareholders (promisors) to invest capital in a corporation (promisee) was for the intended benefit of the plaintiff creditor. The closely held corporation owed the plaintiff, a former employee of the corporation, for a loan she had made to it as well as for back pay plus interest. *Snyder v. Freeman,* 300 N.C. 204, 266 S.E.2d 593. In *Snyder,* we allowed the plaintiff, creditor of the corporation, to prove that the shareholders, officers, and directors of the corporation made an implied promise to the corporation that if the corporation would issue a certain number of shares of stock, the promisors would provide an infusion of capital for the plaintiff's benefit. The Court stated:

The agreement is tantamount to a promise by the signatories, *to cause the corporation* to issue the stock, to receive the capital, and to pay plaintiff, among other creditors, out of the proceeds. The corporation was both plaintiff's debtor and, by implication, promisee of the agreements designed to retire the debt. The signatories caused the corporation to issue its stock and accept the capital; but they failed to cause it to pay plaintiff.

*Id.* at 222, 266 S.E.2d at 604. The Court cited the Restatement (Second) of Contracts and held that "plaintiff's allegations are sufficient to permit her to prove that she is a creditor beneficiary." *Snyder*, 300 N.C. at 221, 266 S.E.2d at 604.

Here, the plaintiff contends that it is a subsection 302(1)(b) beneficiary or donee beneficiary. The Restatement indicates that to identify a third-party donee beneficiary, we must consider the "intention of the parties and . . . [whether] the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) of Contracts § 302 (1981).

On the facts of this case, we note that both IMC and the accounting firm testified that there was no intent to benefit unsecured trade creditors by the contract with the accounting firm. The plaintiff was not even aware that the audit was being performed. The accounting firm's partner in charge of the IMC audit testified that at the time of the contract of 22 June 1981 and thereafter, IMC had neither informed the accounting firm of any intention to provide copies of the audited financial statement to trade creditors nor did the accounting firm have knowledge that the audited financial statements would be provided to Dun & Bradstreet. Testimony of IMC's chief financial officer indicates that it was IMC's policy in 1981 and 1982 not to distribute financial statements to trade creditors. In fact, the record indicates that only one trade creditor received a copy of IMC's 1981 financial statements.

In further considering whether the parties intended to benefit the plaintiff, we note first of all that the contract between IMC and the accounting firm never designated the plaintiff as an intended beneficiary of that contract. While we are aware that this factor alone is not dispositive, it adds weight to our analysis. Restatement (Second) of Contracts § 308 (1981). In addition, as the 150 to 200 copies of the financial statements were delivered to IMC, the accounting firm's services were rendered directly to IMC in

this case and not to the plaintiff. The plaintiff never even saw a copy of the 1981 financial statement. In sum, the evidence here was insufficient to show that "recognition of a right to performance in the beneficiary [was] appropriate to effectuate the intention of the parties." Restatement (Second) of Contracts § 302(1) (1981). We hold as a matter of law that based on an examination of the entire record in this case, the plaintiff, Raritan River Steel Company, was not an intended third-party beneficiary of the contract between IMC and the accounting firm.

Having determined that there was no intent to benefit the plaintiff, we need not reach the defendants' contention that, assuming an intention to benefit is recognized, the alleged breach of contract was not the cause of plaintiff Raritan's damages.

In summary, we reverse the Court of Appeals' decision that the plaintiff stated a claim for breach of a contract to which it was a third-party beneficiary. This case is remanded to the Court of Appeals for further remand to the Superior Court, Mecklenburg County, for reinstatement of the order for summary judgment for defendants.

Reversed and remanded.